NITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

HUNG CAM CHU,

     Petitioner,

v.                                                            No. 1:26-CV-324-H

TODD BLANCHE, et al.,

     Respondents.

## ORDER

Hung Cam Chu is in ICE custody to enforce an indisputably valid order of removal issued against him in 1997. Authorities attempted in 1997 to remove Chu but failed. Now, after being re-detained in March 2026, he petitions for habeas relief. *See* Dkt. No. 1. Chu urges that the respondents have violated the INA and its implementing regulations in re-detaining him and that his detention violates the Fifth Amendment's Due Process Clause because it is punitive and because there is no significant likelihood of his removal in the reasonably foreseeable future.

These claims fail. First, any procedural violation was harmless; and, even if any violation were harmful, a writ of habeas corpus would not be the appropriate remedy. Because a significant likelihood of Chu's removal exists in the reasonably foreseeable future, his *Zadvydas* claim fails. And because a facially legitimate and bona fide ground exists for Chu's detention, his punitive-detention claim fails. Because it "appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus, 28 U.S.C. § 2243, the Order to Show Cause (Dkt. No. 5) is vacated and the petition (Dkt. No. 1) is denied. *See Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998) (noting that courts have discretion to summarily deny habeas relief).

### 1.    Background

Chu entered the United States as a refugee in 1988.  Dkt. No. 1 ¶ 2.  In 1997, an immigration judge ordered Chu removed.  *Id.* ¶ 4.  From that time until early 1998, Chu remained in custody pending his removal to Vietnam.  *Id.* ¶ 5.  When removal efforts failed, the government released Chu on an Order of Supervision (OSUP).  *Id.; see Nguyen v. Noem*, 797 F. Supp. 3d 651, 658 (N.D. Tex. 2025) (noting that, until recently, the United States and Vietnam did not have "a process for repatriation of Vietnamese nationals who had arrived in the United States [before] July 12, 1995").

ICE re-detained Chu during a routine check-in on March 20, 2026.  Dkt. No. 1 ¶ 11.  He was not served with a notice regarding the revocation of his OSUP, nor did he receive "any sort of informal interview to challenge [such n]otice."  *Id.* ¶ 53.  Chu does not recall whether the respondents have submitted a travel document application to the Vietnamese government.  *Id.* ¶ 14.  But he does assert that any attempt is not significantly likely to result in his removal in the reasonably foreseeable future because he "lacks any proof of his Vietnamese citizenship," has no valid Vietnamese passport, and has no Vietnamese birth certificate.  *Id.* ¶ 15.

On July 1, 2026, Chu petitioned for habeas relief in this Court, raising five interrelated claims.  The first and third claims assert that his detention is unlawful because there is no significant likelihood of his removal in the reasonably foreseeable future.  *See id.* ¶¶ 94–98, 104–06.  The third claim also challenges his detention as punitive in violation of the Due Process Clause.  *Id.* ¶ 107.  His second, fourth, and fifth claims allege that the respondents have violated the INA and its implementing regulations.  *Id.* ¶¶ 99–103, 108–16.

On July 2, 2026, the Court ordered the respondents to show cause why Chu's writ should not be granted.  Dkt. No. 5.  On July 10, the respondents notified the Court that "it intends to remove [Chu] from the United States (to Vietnam) within [approximately] the next . . . ten days."  Dkt. No. 8 at 1.  Chu responded, urging that the notice is not evidence and moving for an order requiring the respondents to show proof of removal, among other relief.  Dkt. Nos. 9; 10.

## 2.   Legal Standards

Ordinarily, the government must remove an alien within 90 days of the final order of removal or else release him subject to supervision.  8 U.S.C. § 1231(a)(3).  However, Section 1231(a)(6) provides that certain aliens "may be detained beyond the removal period."  In *Zadvydas v. Davis*, the Supreme Court interpreted Section 1231(a)(6) to determine how long the government may detain an alien pending removal under this Section.  533 U.S. 678, 682 (2001).  The Court first determined that challenges to detainment under this provision are available under 28 U.S.C. § 2241, which is the basis of Chu's habeas petition.  *See id.* at 688; Dkt. No. 1 ¶ 27.  Turning to the merits, the Supreme Court concluded that the government may not detain indefinitely aliens under this provision.  *Zadvydas*, 533 U.S. at 699.  Doing so would violate due process because such long-term detention requires "a criminal proceeding with adequate procedural protections."  *Id.* at 690 (emphasis omitted).  Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699.  Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal."  *Id.*

A court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."  *Id.*  Courts must also

"take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. After meeting this burden, the burden shifts to the respondents to provide evidence to rebut the alien's showing. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Chu separately alleges that his detention is punitive. In *Trump v. Hawaii*, the Supreme Court explained that, in the context of visa denials, "[g]iven the authority of the political branches over admission" of aliens, "'when the Executive exercises this [delegated] power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification' against the asserted constitutional interests of U.S. citizens." 585 U.S. 667, 703 (2018) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 756–57 (1972)). Judicial review is thus "limited." *Fiallo v. Bell*, 430 U.S. 787, 795 n.6 (1977).

Federal regulations govern the issues in this habeas petition as well.  8 C.F.R. § 241.4(l)(2)(iii) gives the government discretion to end an OSUP "to enforce a removal order."  Whether changed circumstances have arisen to permit removal are governed by 8 C.F.R. § 241.13.  *See* § 241.4(b)(4).  Section 241.13(a) "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [Section] 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future."  Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

3.    Analysis

At bottom, Chu's petition challenges his detention on three broad grounds: violations of the INA and its implementing regulations, violation of the *Zadvydas* limit on detention, and violation of his constitutional rights through punitive detention.  No claim succeeds.

    **A.    Even assuming that the respondents did not follow the procedural requirements of 8 C.F.R. §§ 241.4 and 241.13, Chu would not be entitled to habeas relief.**

        **i.    Any error in failing to follow the procedural requirements of 8 C.F.R. §§ 241.4 and 241.13 was harmless.**

Chu contends that the respondents have failed to follow the INA by violating 8 C.F.R. §§ 241.4 and 241.13.  *See* Dkt. No. 1 ¶¶ 22, 99–103.  He alleges that his re-detention should have been reviewed by certain DHS officials and that he was detained

without a written decision showing his reasons for re-detention or the requisite notice and interview for the re-detention process.  *See id.* ¶ 22.

For the purpose of this analysis, the Court assumes that the respondents have yet[1] to follow the procedural requirements of Section 241.13(i)(3).  Harmless error applies in immigration cases generally.  *Rangel-Betancourt v. Barr*, 820 F. App'x 253, 255 (5th Cir. 2020) (citing *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)); *Jalloh v. Garland*, No. 202117, 2023 WL 1859918, at *2 (4th Cir. Feb. 9, 2023) (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004)) (further citation omitted).  The same is true for an agency's procedural violations.  *See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012).  Under a harmless-error analysis, the party asserting error bears the burden of demonstrating prejudice.  *Id.* at 243.

The facts here are on point with a recent decision of this Court, *Nguyen*, 797 F. Supp. 3d 651.  There, the petitioner challenged his detention process as a violation of Section 241.13(i)(3), which governs revocation of an OSUP for removal.  Section 241.13(i)(3) requires "notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances."  *Id.* at 663.  Here, as in that case, Chu has had the opportunity to obtain counsel, make a full argument to a federal court regarding his detention, and submit evidence.  As a result of the judicial process, the respondents have been forced to submit, through a brief notice, that Chu's removal to Vietnam is imminent.  Dkt. No. 8.  As a result, Chu "has clearly been given notice because the respondents have

---

[1] The Court notes that there is no particular timeline in which these procedures must happen other than "promptly" after re-detention.  The procedures all take place after the alien is detained, so they are not precursors to detention.  *See* 8 C.F.R. § 241.13(i)(3) (procedures arise "promptly after [an alien's] return to [ICE] custody").

fully explained through briefing and declarations the basis for their conclusion." *Nguyen*, 797 F. Supp. 3d at 663.

Because Chu has received more than a full notice and an opportunity to be heard, even if the respondents failed to conform to the regulations set forth in Sections 241.4 and 241.13, any error is now harmless in light of the procedures in this case. There is no basis, on these grounds, for ordering Chu's immediate release. Moreover, because habeas is not backward-looking, the process provided now renders forward-looking relief separately inappropriate. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention."); *Lane v. Williams*, 455 U.S. 624, 631 (1982) (explaining that where detainment or its consequences have expired, a habeas petition is moot); *Nguyen*, 797 F. Supp. 3d at 670 (same).

### ii. Even if the respondents failed to abide by the requirements of Sections 241.4 and 241.13 and the error was harmful, a writ of habeas corpus would not be the appropriate remedy.

Chu urges that the respondents' alleged failure to follow their internal procedures is a due process violation that warrants his release. *See* Dkt. No. 1 ¶ 22; *id.* at 28 (prayer for relief). But even assuming that ICE's detention of Chu constitutes harmful error, a writ of habeas corpus would be an inappropriate remedy.

Habeas corpus "may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). "[T]he failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen*, 797 F. Supp. 3d at 664 (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)). For instance, in *Wilkinson v.*

*Dotson*, the Supreme Court held that the petitioners had raised cognizable claims under 42 U.S.C. § 1983, but the Court warned that their holding "d[id] not mean immediate release from confinement or a shorter stay in prison; it mean[t] at most new eligibility review." 544 U.S. 74, 82 (2005). Thus, a petitioner may not use habeas to "fulfill . . . administrative requirements." *Nguyen*, 797 F. Supp. 3d at 665; *see Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976) (explaining that habeas "cannot be used properly for any other purpose" than release "from unlawful imprisonment or custody"). The respondents' administrative shortcomings here, even if harmful, do not implicate due process. And because Chu seeks to fulfill administrative requirements, his claim for relief on regulatory grounds fails.

> **B.      Because circumstances have changed and there is now a significant likelihood that Chu may be removed to Vietnam in the reasonably foreseeable future, the respondents did not violate Section 241.4, Section 241.13, or the Fifth Amendment.**

Chu asserts that the respondents violated the INA, its implementing regulations, and the Due Process Clause of the Fifth Amendment when they re-detained him without the existence of changed circumstances. *See* Dkt. No. 1 ¶¶ 62, 78–82. The Court considers these arguments in turn.

First, the due-process claim fails. Chu has only been detained for four months, while detention under *Zadvydas* is generally lawful for up to six months. *See* 533 U.S. at 700–01.[2] While some courts in the Fifth Circuit categorically deny habeas relief on *Zadvydas* grounds

---

[2] Chu asserts, without legal authority, that his "post-order civil detention must be aggregated with his current period of detention"—meaning the Court should treat him as one detained for 10 months. *See* Dkt. No. 1 ¶ 7. While some courts have adopted that position, for the reasons stated in *Huynh v. Noem*, this Court is unpersuaded. No. 1:26-CV-006, 2026 WL 1188785, at *4–5 & n.4 (N.D. Tex. Mar. 16, 2026) (collecting cases and rejecting this contention); *Surovtsev v. Noem*, No. 1:25-CV-160, 2025 WL 3264479, at *8 & n.9 (N.D. Tex. Oct. 31, 2025) (same).

in this situation,[3] others permit habeas relief under *Zadvydas* if the petitioner "prove[s] that there is no significant likelihood of removal in the reasonably foreseeable future." *Puertas-Mendoza v. Bondi*, No. SA-25-CA-890, 2025 WL 3142089, at \*2 (W.D. Tex. Oct. 22, 2025) (citation modified).  Even under the more lenient standard, Chu fails.  He does not claim there is any barrier to his removal.  *See Sanchez Gamez v. Mullin*, No. 1:26-CV-055, Dkt. No. 14 at 5 (N.D. Tex. May 1, 2026) (rejecting premature *Zadvydas* claim on similar grounds).  He merely questions the government's authority to persuade the Vietnamese government that he is subject to return.  *See* Dkt. Nos. 1 ¶ 15; 9 at 1–4.  That is far from proof, so habeas relief is not warranted.

Second, his changed-circumstances claim fails.  The operative language is that ICE "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  "This regulation gives the decision-making power primarily to ICE and not to this Court," such that the Court's review "is necessarily limited."  *Nguyen*, 797 F. Supp. 3d at 666.  To prevail, the respondents need only establish "a significant likelihood that removal in the reasonably foreseeable future may occur," rather than "be certain or immediate."  *Id.* at 666–67 (citing 8 C.F.R. § 241.13(i)(2)).

The facts in this case are straightforward.  As the Court explained in *Nguyen*, "[t]he current administration and the Socialist Republic of Vietnam have developed their relationship, allowing the current administration to more effectively remove Vietnamese

---

[3] *See Garcia Duarte v. DHS*, No. 1:25-CV-1895, 2026 WL 233854, at \*1 (W.D. La. Jan. 12, 2026) (collecting cases).

– 9 –

nationals who entered the United States before 1995." 797 F. Supp. 3d at 671. Specifically, the two Nations signed a Memorandum of Understanding in 2020 "that created a process of removal for pre-1995 arrivals" like Chu. *Id.* at 658. And while that memorandum is several years old, the Trump administration has begun to deport pre-1995 arrivals "at higher numbers than it has in the past." *Id.* at 668 (quotation omitted). Even without accounting for the respondents' representation as to pending removal, Chu's removal in the reasonably foreseeable future is significantly likely.

Chu provides little evidence of his own and instead questions the respondents' chance of success, given his lack of documents. Dkt. Nos. 1 ¶ 15; 9 at 3–4 (asserting that, without proof of documents, the Court must assume no documents exist). He also attempts to tie the length of his detention—brief as it is—back to his original 1997 detention and to assert that the odds of his removal are the same as they were in 1997. Dkt. No. 1 ¶ 18. But mere "skepticism" is unpersuasive here. *Huynh*, 2026 WL 1188785, at *7.

Moreover, the respondents are not required to refrain from detaining Chu "until they [have] travel documents, a flight planned, or even applied for travel documents." *Nguyen*, 797 F. Supp. 3d at 669. That is "because this burden is inconsistent with the deference afforded to the respondents and the plain text that, for detention to be appropriate, there be merely—in ICE's determination—'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" *Id.* (quoting 8 C.F.R. § 241.13(i)(2)). "What Vietnam does and does not require is a matter to which the Executive has better knowledge." *Huynh*, 2026 WL 1188785, at *7. Thus, while Chu's removal "is neither certain nor guaranteed," there is a significant likelihood that he will be removed to Vietnam in the reasonably

foreseeable future.  *Ladak v. Noem*, 814 F. Supp. 3d 712, 729–30 (N.D. Tex. 2025) (quoting

*Surovtsev*, 2025 WL 3264479, at *8).

C.    **Because Chu's detention is warranted, any alleged ulterior motive does not render habeas relief appropriate.**

Last is Chu's contention that his detention is a form of punitive action, rather than

immigration enforcement.  *See* Dkt. No. 1 ¶¶ 69–70.  He cites a host of district courts that

have ordered habeas relief for purported punitive detention, including on the grounds that

the government selected certain aliens for detention or removal owing to their political

beliefs.  *See id.* ¶ 70.

But as the Supreme Court explained in *Trump*, judicial intrusion into the

immigration sphere is necessarily limited.  *See* 585 U.S. at 702–03.  Said differently, the

decision to admit or exclude is "frequently of a character more appropriate to either the

Legislature or the Executive."  *Id.* at 702 (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)).

While *Trump* and *Kleindienst* related to the discretion to admit or exclude an alien, the

principles underlying those cases are equally applicable to choosing when and whether to

detain removable aliens.  "Any rule of constitutional law that would inhibit the flexibility of

the President to respond to changing world conditions should be adopted only with the

greatest caution"—and that includes the decision to execute an indisputably valid removal

order.  *Id.* at 705 (internal quotation marks omitted).

In *Trump*, the Supreme Court declined to uphold a preliminary injunction against the

Trump Administration's so-called "Muslim Ban" because the policy of excluding certain

nationals from entering the United States "[could] reasonably be understood to result from a

justification independent of unconstitutional grounds."  *Id.* at 705.  That ban "[said] nothing

about religion," even if its proponents did.  *Id.* at 706.  And each of the designated countries were previously listed as "national security risks."  *Id.*

Here, Chu offers a single cherry-picked line from a DHS press release.  He uses it to suggest that DHS is comparing domestic detention of removable aliens to "prison."  Dkt. No. 1 ¶ 69.  But the article instead addresses the removal of certain Salvadoran nationals whose homeland subsequently imprisoned them upon return.  Dkt. No. 1-1 at 4.  Even if the Court adopted Chu's view and read the article as suggesting that dreadful, punitive detention awaited aliens like Chu who are ordered removed, his claim would still fail. "[D]etention during deportation proceedings" is a "constitutionally valid aspect of the deportation process."  *Demore v. Kim*, 538 U.S. 510, 523 (2003).  Section 1231 permits his re-detention to ensure his removal.  Because Chu's detention is lawful, any alleged statements of animus or desire to punish would not render his detention unlawful.[4]

### 4.    Conclusion

The Court recognizes that Chu's removal is not guaranteed.  But the record here is clear: the respondents are actively working to secure his removal against a backdrop of rising deportation efforts to Vietnam.  His re-detention process was either harmless or else inapposite in a habeas action.  And because his detention is lawful, his punitive-detention claim fails.  Accordingly, the petition (Dkt. No. 1) is denied.  Chu's motion for an order to submit additional evidence and stay his removal (Dkt. Nos. 9; 10) is denied as moot.

---

[4] Chu's cited cases to the contrary fail to discuss *Trump* and *Kleindienst* and are thus unpersuasive.

– 13 –

So ordered on July 16, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE